## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TRAVON LEVI WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv743 |
| | ) | |
| FNU BENTLEY and | ) | |
| FNU LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion for Summary Judgment" (Docket Entry 30 (the "Summary Judgment Motion")). For the reasons that follow, the Court should grant the Summary Judgment Motion.

### BACKGROUND

### I. Procedural History

Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Travon Levi Woods (the "Plaintiff"), acting pro se, commenced this action against two employees of the North Carolina Department of Public Safety ("NCDPS"), Seth Bentley ("Bentley") and Christopher Lewis ("Lewis") (collectively, the "Defendants"),[1] for using excessive

---

[1] The caption includes only surnames, reflecting the extent of Plaintiff's knowledge when he filed suit. (See Docket Entry 2 at 2 (naming Defendants by surname and listing job titles and place of employment).) After repeated, unsuccessful attempts at service (see, e.g., Docket Entries 20, 21), the Court (per the undersigned)

force against Plaintiff during his incarceration at Albemarle Correctional Institution ("ACI"). (See Docket Entry 2 (the "Complaint") at 1-4.) Defendants answered the Complaint, invoking various defenses (to include qualified immunity). (See Docket Entry 26 (the "Answer").)[2] Thereafter, the parties commenced discovery. (See Text Order dated Nov. 19, 2020 (adopting Scheduling Order).)[3]

After discovery closed, Defendants jointly filed the Summary Judgment Motion (Docket Entry 30), supporting memorandum (Docket Entry 31), and exhibits (Docket Entries 32-1, 32-2, 32-3, 32-4, 32-

---

directed "Assistant Attorney General ('AAG') Alex R. Williams of the North Carolina Department of Justice, as an officer of the Court" (Text Order dated Aug. 29, 2020) to inquire and report as to the addresses and employment statuses of Defendants (see id.). Efforts in compliance with that order resulted in the identification of Defendants and their then-current job titles and places of employment (see Docket Entry 22 at 2), which ultimately allowed for successful service of process (see Docket Entries 24, 25).

2 The Answer denied the allegations relating to exhaustion of administrative remedies, as Defendants lacked "information sufficient to form a belief as to th[ose] allegations" (id. at 1).

3 During discovery, Plaintiff filed a copy of his "First Interrogatories, Requests for Production of Documents, and Requests for Admissions" (Docket Entry 27 (all-caps font omitted)), which he supposedly served on Defendants on January 15, 2021 (see id. at 10). Consistent with Local Rule 26.1(b)(3), the record does not reflect Defendants' responses to such inquiries. (See Docket Entries dated Jan. 15, 2021, to present.) In any event, the interrogatories, requests for production of documents, and requests for admission do not pertain to Plaintiff's exhaustion of administrative remedies (see Docket Entry 27 at 1–9), the sole (and dispositive) issue discussed above.

2

5, 32-6, 32-7, 32-8 (slip sheet), 32-9, 32-10 (slip sheet)).[4] That same day, the Clerk sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition . . . within 30 days from the date of service of the [Summary Judgment Motion] upon [him]." (Docket Entry 36 at 1 (emphasis omitted).) The letter specifically cautioned Plaintiff that a "failure to . . . file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [D]efendants' contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter," as well as that, "unless [Plaintiff] file[s] a response in opposition to the [Summary Judgment Motion], it is likely . . . judgment [will be] granted in favor of [D]efendants." (Id.) Despite these warnings, Plaintiff did not respond. (See Docket Entries dated Aug. 24, 2021, to present.)[5]

---

4 Defendants simultaneously filed a motion to seal (Docket Entry 33 (the "Sealing Motion")) and a sealed version of Plaintiff's medical records (Docket Entry 34-11), the subject of the Sealing Motion. Defendants also obtained Plaintiff's signature on a document "acknowledg[ing] that [he] ha[d] received and reviewed" (Docket Entry 37-1 at 1 (emphasis omitted)), inter alia, the Summary Judgment Motion, supporting memorandum, and all accompanying materials. (See id.)

5 By local rule, "[i]f a respondent fails to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). In particular, a party's failure "to respond to a summary judgment motion may leave uncontroverted those facts established by the motion," Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). However, the United States Court of Appeals for the Fourth Circuit requires substantive review of even unopposed motions for summary judgment. See id. ("[T]he court, in considering a motion for summary

3

**II. Allegations**

In his unverified Complaint, Plaintiff alleges that:

On May 11, 2018, Plaintiff and Bentley exchanged words at ACI near the entrance to the exercise yard. (See Docket Entry 2 at 3.) Plaintiff challenged Bentley to a physical confrontation "away from camera view" (id.), prompting Bentley to ask Plaintiff to submit to handcuffs. (See id.) Plaintiff complied but continued to "verbally . . . assault [Bentley]" (id.), who responded in kind. (See id.) As Bentley escorted a handcuffed Plaintiff toward "the Sergeant's office[,] . . . [Bentley] slam[med Plaintiff] against the wall without valid reason" (id.) and punched him in the right eye with "a curled palm" (id.).

Shortly thereafter, "Lewis t[ook] control of the situation by leading [Plaintiff] into his office." (Id.) During the conversation that followed, Lewis "sp[oke] to [Plaintiff] dismissively" (id.), which angered Plaintiff and ultimately resulted in Lewis escorting Plaintiff to "restrictive housing while bending [Plaintiff's] wrists in multiple uncomfortable, painful ang[le]s" (id.). En route to restrictive housing, Plaintiff fell on the steps, and Lewis failed to support his weight or help him back to his feet. (See id.) Once in restrictive housing, a non-

---

judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.").

4

party prison employee photographed "[Plaintiff's] face, wrists, and legs" (id.), after which two nurses assessed Plaintiff. (See id.)

Plaintiff has represented that he filed a grievance regarding the use of force by Defendants (the "Incident"). (See id. at 2.)[6] However, he has conceded his failure to "appeal any adverse decision to the highest level possible in the administrative procedure" (id.), explaining that he made "[s]everal attempts . . . at filing grievances" (id.) but faced rejection on the grounds that (A) another then-pending grievance had not yet proceeded past the second step of administrative review, or (B) he had presented more than one issue in a single grievance. (See id.)

As a result of the Incident, Plaintiff has claimed entitlement to "monetary damages, emotional damages, physical damages, punitive damages, and compensatory awards." (See id. at 4.) Plaintiff has sought to recover between $45,000 and $1.5 million from "[D]efendants in their individual capacities" and "official capacities . . . if possible" (id.) and has requested the termination of Defendants' employment with NCDPS (see id.).

---

6 According to the Complaint, Plaintiff filed a grievance on May 5, 2018, six days before the Incident, "[r]eporting excessive force from two government officials while being restrained and physically cooperative" (id.). This Memorandum Opinion and Recommendation assumes that such grievance relates to the Incident and that the Complaint contains a typographical error as to the date of the grievance.

5

**III. The Record**

In support of the Summary Judgment Motion, Defendants tendered (i) personal declarations (Docket Entries 32-6, 34-7 ("Lewis Declaration")),[7] (ii) a declaration from Kimberly D. Grande ("Grande"), the Executive Director of the NCDPS's Inmate Grievance Resolution Board ("IGRB") (Docket Entry 32-1 ("Grande Declaration")), (iii) a copy of NCDPS's Administrative Remedy Procedure ("ARP") dated August 1, 2013 (Docket Entry 32-2), (iv) copies of three grievances that Plaintiff fully exhausted between January 1, 2018, and December 31, 2018 (Docket Entries 32-3, 32-4, 32-5 (collectively, the "Grievances")), (v) a report regarding the Incident (Docket Entry 32-7), (vi) a recording of the Incident (Docket Entry 32-8), (vii) photographs of Plaintiff (Docket Entry 32-9), and (viii) certain of Plaintiff's medical records (Docket Entry 32-10).

As relevant to the Summary Judgment Motion, the record reflects the following:

---

[7] Defendants failed to file the Lewis Declaration with the other publicly available exhibits accompanying the Summary Judgment Motion. Although Defendants have not sought to seal the Lewis Declaration (see Docket Entry 33), only a sealed version of that document appears on the docket. (Compare Docket Entries 32-1, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8, 32-9, 32-10, with Docket Entries 34-1, 34-2, 34-3, 34-4, 34-5, 34-6, 34-7, 34-8, 34-9, 34-10, 34-11.) By Local Rule, a party who moves to seal documents "must file two complete sets of documents, one public and one under temporary seal." M.D.N.C. LR 5.4(c)(8) (emphasis added).

6

Case 1:19-cv-00743-LCB-LPA   Document 38   Filed 11/05/21   Page 6 of 16

### A. Grande Declaration

Grande averred that she reviewed records maintained by the IGRB (see Docket Entry 32-1, ¶ 10) and discovered only three fully exhausted grievances by Plaintiff "that reached the IGRB between January 1, 2018, and December 31, 2018" (id., ¶ 11). Regarding those Grievances, final administrative review occurred on February 2, 2018, July 9, 2018, and August 23, 2018, respectively. (See id., ¶ 12.)

### B. Grievances

Grande provided, as exhibits to the Grande Declaration, "[t]rue and accurate copies of the Grievances" (id.). According to the Grievances:

Plaintiff filed the first Grievance on November 29, 2017, relating an encounter between Plaintiff and a non-party correctional officer during which Plaintiff inquired about the "barber shop list" (Docket Entry 32-3 at 2) and "[the officer] made a personal threat" (id.) against Plaintiff. As a result of that encounter, Plaintiff requested relocation. (See id.) On May 7, 2018, after his release from segregated housing, Plaintiff submitted the second Grievance concerning some missing property. (See Docket Entry 32-4 at 2.) As relief, Plaintiff stated that he wished to recover such property. (See id.) Plaintiff lodged the third Grievance on June 21, 2018, describing some of his property as missing or damaged during his transfer from ACI to Scotland

7

Correctional Institution and requesting that ACI return such property. (See Docket Entry 32-5 at 2.) No Grievance in the record mentions the Incident or any use of force by Defendants. (See Docket Entries 32-3, 32-4, 32-5.)

## DISCUSSION

### I. Relevant Legal Standards

#### A. Summary Judgment

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Additionally, "[a]s to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In particular:

> Where, as here, the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense. When the defendant has produced sufficient evidence in support of its affirmative defense, the burden of production shifts to the plaintiff to come forward with specific facts showing that there is a genuine issue for trial.

8

Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (internal citation and quotation marks omitted).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

"However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, No. 4:08CV2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (unpublished) (citing Barber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that

9

"[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). In response to a summary judgment motion, "the nonmoving party [must] go beyond the pleadings and[,] by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (internal quotation marks omitted). Factual allegations in a complaint or court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08CV721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011) (unpublished), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

### B. Exhaustion

The Prison Litigation Reform Act of 1995, as amended (the "PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter

10

v. Nussle, 534 U.S. 516, 532 (2002). The defendant bears the burden of establishing that a prisoner failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge . . . ." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015) ("[A]ll . . . of the circuits that have considered the issue agree that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (internal quotation marks omitted)). A prisoner satisfies the PLRA exhaustion requirement when he "ha[s] utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). The relevant prison's grievance procedures determine the steps that a prisoner must take to achieve exhaustion. See id. at 726.

North Carolina state prisons employ a three-step ARP. (See Docket Entry 32-2 (copy of ARP issued on August 1, 2013).) The ARP first encourages inmates to attempt "informal communication with

11

responsible authorities at the facility [where] the problem arose." ARP, § .0301(a). Absent resolution in that manner, the ARP provides that "any aggrieved inmate may submit a written grievance . . . ." Id., § .0310(a)(1). The grievance must "contain language sufficient to put defendants on notice" of the constitutional violation. Hamilton v. Daniels, 5:13CT3048, 2013 WL 6795008, at *3 (E.D.N.C. Dec. 20, 2013) (unpublished) (finding that grievance failed to put prison officials on notice because it lacked information pertaining to inmate's need for safety helmet, wheelchair, or assistance from orderly).

The ARP imposes several requirements as to the form and timing of grievances. More specifically, an inmate must submit a grievance on a particular document, ARP, § .0304(a), within 90 days of the event giving rise to the grievance, id., § .0306(c)(2). Additionally, an inmate may not seek "a remedy for more than one incident" via a single grievance, id., § .0306(c)(4), and may not file a new grievance while another grievance remains pending until "the pending grievance has completed [the second step of administrative] review or has been resolved," id., § .0304(b). Non-compliance with any such requirement constitutes grounds for rejection. See id., § .0306(c)(6).

After a screening officer accepts a grievance, the inmate will receive a written response from the facility head or designee. See id., § .0310(a)(5). If the inmate remains unsatisfied with the

12

decision at the above-described step one of the grievance process, he or she may request relief from the facility head. See id., § .0310(b)(1). If the above-described step two of the grievance process fails to resolve the inmate's concern, "he or she may appeal to the Secretary of Public Safety through the Inmate Grievance Examiner ('IGE')." See id., § .0310(c)(1). "The decision by the IGE or a modification by the Secretary of Public Safety . . . constitute[s] the final step of the [ARP]." Id., § .0310(c)(6). To demonstrate exhaustion, an inmate generally must complete all three steps of the ARP. See Murray v. Dobyns, No. 1:12CV214, 2013 WL 3326661, at *2-3 (M.D.N.C. July 1, 2013) (unpublished), recommendation adopted, slip op. (M.D.N.C. Jan. 14, 2014); accord Alston v. Solomon, No. 3:14CV250, 2014 WL 2208275, at *2 (W.D.N.C. May 28, 2014) (unpublished).

## II. Analysis

Defendants first have staked their entitlement to summary judgment on Plaintiff's failure to exhaust administrative remedies (see Docket Entry 31 at 11), arguing that Plaintiff only completed the three steps of the ARP as to the Grievances, all of which related to issues other than the Incident (see id. at 9–11). Alternatively, Defendants have contended that no reasonable jury could conclude that they used excessive force against Plaintiff during the Incident. (See id. at 11–14.)

13

The Court need address only Defendants' argument concerning exhaustion of administrative remedies. Generally speaking, Plaintiff's lack of response to the Summary Judgment Motion does not automatically defeat his claim. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (requiring substantive review of unopposed summary judgment motions). However, upon review of the record, summary judgment for Defendants remains appropriate. The Grande Declaration and Grievances submitted by Defendants establish that Plaintiff failed to exhaust administrative remedies as to the Incident. (See Docket Entry 32-1, ¶¶ 10–12; Docket Entries 32-3, 32-4, 32-5.) Even if Plaintiff filed or attempted to file a grievance regarding the Incident, as the (unverified) Complaint asserts (see Docket Entry 2 at 2), the record lacks any evidence to show that Plaintiff completed all three steps of the grievance process (as required under the ARP) (see id. (conceding failure in that regard)) or that, "through no fault of his own," Moore, 517 F.3d at 725, such remedy eluded him. Accordingly, Plaintiff's failure to respond to the Summary Judgment Motion left "uncontroverted," Custer, 12 F.3d at 416, the fact that Plaintiff did not (fully) pursue administrative remedies regarding the Incident.

In sum, because Defendants have offered sufficient evidence to support their exhaustion-based affirmative defense, Plaintiff, as "the nonmoving party[, must] go beyond the pleadings and[,] by

14

[his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial," Celotex Corp., 477 U.S. at 324 (internal quotation marks omitted). See also Ray Commc'ns, 673 F.3d at 299. In light of Plaintiff's failure to respond to the Summary Judgment Motion, no competent evidence supports the proposition that Plaintiff exhausted administrative remedies as to the Incident. Even if the Complaint contained such allegation, Plaintiff may not rely on the mere allegations of his unverified Complaint to defeat summary judgment. See Pronin, 628 F. App'x at 161. Those circumstances warrant dismissal of Plaintiff's claim. See, e.g., Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016) ("Given that [the plaintiff] failed to . . . exhaust his claims, dismissal is mandatory."). Accordingly, the Court should grant summary judgment in favor of Defendants.

## CONCLUSION

Because the record demonstrates that Plaintiff did not exhaust administrative remedies as to his eighth-amendment excessive-force claim, Defendants have established entitlement to judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motion (Docket Entry 30) be granted and that this action be dismissed without prejudice for failure to exhaust administrative remedies.

                                         /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                                  **United States Magistrate Judge**

November 5, 2021